# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL KARMO,

    Defendant.

Case No. 20-CR-170-1-JPS

**ORDER**

## 1. INTRODUCTION

On September 15, 2020, a grand jury returned a two-count indictment, in which Defendant was charged with (1) being a felon in possession of a firearm and (2) possession of an unregistered silencer. (Docket #10). Defendant pleaded not guilty to both counts. (Docket #17). On November 14, 2020, Defendant filed a motion to suppress and requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (hereinafter, a "*Franks* hearing"). (Docket #36). On February 5, 2021, Magistrate Judge Nancy Joseph issued an order in which she (1) denied Defendant's request for a *Franks* hearing and (2) recommended that this Court deny Defendant's motion to suppress. (Docket #53).[1]

On February 18, 2021, Defendant filed his objections to Magistrate Joseph's order and recommendation, and the government responded. (Docket #57, #60). For the reasons explained in the balance of this Order, the

---

[1]Although addressed together in one document, the docket contains separate entries for Magistrate Joseph's order denying Defendant's request for a *Franks* hearing, (Docket #52), and her Report and Recommendation on Defendant's motion to suppress, (Docket #53). For convenience, citations herein to Judge Joseph's February 5, 2021 order and recommendation will be to Docket #53.

Court will (1) affirm Magistrate Joseph's order denying Defendant's request for a *Franks* hearing and (2) adopt her recommendation and deny Defendant's motion to suppress.

**2.   STANDARD OF REVIEW**

Defendant objects to both the magistrate's order denying a *Franks* hearing (the "*Franks* Order") and her recommendation that the Court deny Defendant's motion to suppress (the "Recommendation"). (*See* Docket #57 at 8). Federal Rule of Criminal Procedure 59 requires the Court to apply different standards of review to the *Franks* Order and to the Recommendation. Pursuant to Rule 59(a), if a party objects to a magistrate judge's determination as to "any matter that does not dispose of a charge or defense," upon its review, the district court judge "must . . . modify or set aside any part of the order that is contrary to law or clearly erroneous." Because Magistrate Joseph's *Franks* Order is non-dispositive, the Court will review her determinations for clear error. However, Rule 59(b) makes clear that the Court "must consider de novo" Defendant's objection to Magistrate Joseph's Recommendation, in which she recommends that this Court deny Defendant's motion to suppress evidence. *See* Fed. R. Crim. P. 59(b)(1), (3) ("A district judge may refer to a magistrate for recommendation a defendant's motion . . . to suppress evidence . . . . The district judge must consider de novo any objection to the magistrate's recommendation.").

**3.   FACTUAL AND PROCEDURAL BACKGROUND**

**3.1   Law Enforcement's Arrest & Search of Defendant**

In the afternoon of September 1, 2020, a woman (hereinafter, the "Confidential Informant") went to the Waverly, Iowa Police Department and spoke with Officer Dave Lindley ("Officer Lindley") about Defendant. (Docket #47-1). Thereafter, Officer Lindley called Sergeant Joshua Hecker

("Sergeant Hecker") of the Kenosha, Wisconsin Police Department. (*Id.*) Sergeant Hecker then emailed another Kenosha police officer. (*Id.*, Docket #47 at 3). The text of this email is as follows:

> Call from Officer Dave Lindley from Waveryly [sic] PD (Waverly, Iowa). A female just came to his PD and gave a written statement advising that a man named Michael Karmo (Approx. 40 years old) is with another male and a dog in a newer Toyota Sequoia. Allegedly the two males left Waverly, IA around 0015 hours today (9/1) and are intending on coming to Kenosha to loot and to "pick people off". The drive time would take them 5 hours from Waverly to Kenosha, so they are likely already here. Further, the witness advised that their plan was to get a "nice hotel room" in the Kenosha area for the night. The reporting witness claimed that there are two long guns concealed in a cooler within the van. Law Enforcement has no viable intel on Mark's [sic] Toyota, buy [sic] believes that the vehicle is registered in Missouri. The [sic] also said that he has ties in California.

(Docket #47-1). In her written statement, dated September 1, 2020, the Confidential Informant wrote that Defendant and his friend "got to [her] house at 12:15 a.m." and that Defendant told her "he couldn't stay long because of all the guns in the back of his vehicle." (Docket #47-3). Defendant asked the Confidential Informant to come with him to Kenosha "to see what[] [was] going on." (*Id.*) After the Confidential Informant declined, Defendant told her he could not stay long "with the two machine guns he had in his car." (*Id.*) He then left "on his way to Kenosha." (*Id.*)

The Confidential Informant also showed Officer Lindley her text messages with Defendant, and she let Officer Lindley take a picture of the same. (Docket #47-2). Defendant sent the Confidential Informant two pictures: one of Defendant and another man (later identified as Cody Smith ("Smith")) holding large guns, the other of a large rifle with a drum

magazine. (Docket #47 at 4, #47-2). Defendant sent a text message saying, "[t]his [sic] the game changer" along with the second image. (Docket #47-2).

After learning about Defendant from the Kenosha Police Department, the FBI reviewed Defendant's Facebook page. (Docket #47 at 4). The FBI observed that Defendant had multiple photos of firearms and of himself with firearms. (*See* Docket #47-4). The FBI determined that Defendant was a convicted felon and, as such, could not legally possess those firearms. (Docket #47 at 4).

Believing that Defendant was in possession of firearms and intended to injure people during the then-ongoing civil unrest in Kenosha, Wisconsin, the FBI requested Defendant's cellular data. (*Id.*) On September 1, 2020, Special Agent Steven Andreoni ("S/A Andreoni") filled out an "AT&T Exigent Circumstances Form – Transactional Records With/Without Location" (the "AT&T Form"). (Docket #47-5). When asked to describe "the facts showing exigent circumstances," S/A Andreoni wrote, "subject traveling to Kenosha, WI with long guns/rifles to 'pick people off and loot.'" (*Id.* at 1). S/A Andreoni requested updated cell-site location data for Defendant's phone number every 15 minutes over a period of 48 hours. (*Id.* at 1–2, Docket #47 at 4). Additionally, on September 1, 2020, the government submitted an application requesting the installation and use of a pen register and trap and trace device or process (the "pen-trap device") on Defendant's cellphone number. (*See* Docket #47-6 at 1–4). Magistrate Judge Stephen Dries issued an order authorizing the installation of the pen-trap device that day. (*Id.* at 5–7).

The cellphone location data showed that Defendant's mobile device was at or near the La Quinta Hotel Inn in Pleasant Prairie, Wisconsin.

(Docket #36 at 5, #47 at 5). The FBI found Defendant and Smith in Defendant's vehicle, with Smith in the driver's seat. (Docket #36 at 5, #47 at 5). Both Defendant and Smith consented to the FBI's search of the vehicle, during which the FBI recovered, among other things, an AR-15 assault rifle, a Mossberg 12-gauge shotgun, a Taurus 9 mm handgun, a homemade silencer, multiple firearm magazines, a firearm muzzle attachment, a drone, body armor, tactical gear, and a folding knife with a 5½ inch serrated blade. (Docket #47 at 5, #47-7). Defendant and Smith also consented to the FBI's search of their hotel room, where law enforcement recovered a loaded 9 mm handgun, a dagger with an 8¾ inch blade, a twisted cable survival saw, 67 rounds of 9 mm ammunition, and 131 shotgun shells in a duffle bag. (Docket #47 at 5, #47-8). The FBI also photographed some items that were not initially recovered during the first search of the hotel room. (Docket #47 at 5, #47-8).

At some point, Officer Lindley prepared a report in which he provided a more thorough description of his interaction with the Confidential Informant on September 1, 2020. (Docket #39-1 at 2, #47-9 at 1). In this report, Officer Lindley noted that the Confidential Informant told him "that [Defendant] told her that people were just going up to Kenosha and 'picking people off.'" (Docket #39-1 at 2, #47-9 at 1). According to Officer Lindley's report, the Confidential Informant "stated that [Defendant] did not state that he was going to do that." (Docket #39-1 at 2, #47-9 at 1).

The parties dispute when Officer Lindley sent this report to the FBI.[2] Pursuant to email correspondence between the Waverly, Iowa Police Department and the FBI, it appears that the FBI received this report at 3:47 a.m. on September 2, 2020. (Docket #47-10). However, the respective affidavits in support of (1) the criminal complaint and arrest warrant as to Defendant, (2) the FBI's subsequent search of Defendant's hotel room, and (3) the subsequent search of Defendant's residence in Missouri include a sworn statement that the FBI received Officer Lindley's report at around 3:00 a.m. on September 1, 2020. (Docket #40-2 at 13, #40-3 at 16, #40-4 at 11). Because Defendant's objections stem from the magistrate's determination that the FBI received the report on September 2, 2020, the Court provides a summary of her analysis below.

### 3.2 Magistrate Joseph's Findings of Fact

#### 3.2.1 Defendant's Request for a *Franks* Hearing

As grounds for his request for a *Franks* hearing, Defendant argued that there were materially false statements and/or omissions in both (1) the AT&T Form and (2) the FBI agents' affidavits. (Docket #36 at 11–13, 21). A defendant is entitled to a *Franks* hearing only if he makes a "'substantial preliminary showing' that: (1) the affidavit contained a material false

---

[2]Defendant also argues that, based on the government's response to Defendant's motion (Docket #47), a "clear question" exists as to which police department sent the full report to the FBI. (Docket #57 at 4–5). Upon review of the government's response, the Court finds no such argument. Instead, the Court finds that the magistrate incorrectly assumed that Thomas Hansche—the email recipient of Sergeant Hecker's September 1, 2020 email at 4:22 p.m.—was with the FBI (*see* Docket #53 at 2). Rather, as the government makes clear, Sergeant Hecker sent his e-mail to other Kenosha Police Department personnel. (Docket #47 at 3). Regardless, at no point does the government argue that the FBI received an email around 3:00 a.m. on September 2, 2020 from any party other than the Waverly, Iowa Police Department.

statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United Stats v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155–56). Furthermore, "*Franks* makes it clear that affidavits supporting a search warrant are presumed valid, and that the 'substantial preliminary showing' that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant," i.e., the law enforcement officer who sought the search warrant. *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (citing *Franks*, 438 U.S. at 171).

Upon review of the record, Magistrate Joseph determined that the Waverly Police Department did not send its full report until 3:47 a.m. on September 2, 2020. (Docket #47-9 at 1, #47-10 at 1–2, #53 at 6). Therefore, when S/A Andreoni filled out the AT&T Form, he was unaware of the Confidential Informant's statement that Defendant did not say that he was planning to "pick people off." (Docket #53 at 6–7). According to Magistrate Joseph, "[t]he officers could not have omitted any information regarding the tipster's subsequent statement that [Defendant] himself was not planning to [pick people off], because they had not yet received this information." (*Id.* at 6–7). Based on the foregoing, Magistrate Joseph determined that Defendant could not show perjury, fabrication, or bad faith in the FBI's submission of the AT&T Form, and, thus, Defendant was not entitled to a *Franks* hearing. (*Id.* at 7).

Similarly, upon her review of the record, Magistrate Joseph determined that the statement in the FBI officers' affidavits that indicate that the "FBI received a report" from the Waverly Police Department on "September 1, 2020 at approximately 3:00 a.m." reflects a typographical

error. (*Id.*) She concluded that, because it was clear that the Iowa police "emailed the 'full report' to the FBI on September 2, 2020 at 3:47 a.m.," there was "no question" that the FBI did not receive that report until September 2, 2020. (*Id.*) Therefore, Defendant could not show that the FBI agents' inclusion of the statement that they received a tip on September 1, 2020 at 4:22 p.m. that Defendant was traveling to Kenosha to "loot and possibly 'pick people off,'" (Docket #40-2 at 7, #40-3 at 9, #40-4 at 4), was a material falsification or misrepresentation. That statement was based on the information the FBI had on September 1, 2020. Further, all three of the affidavits include the statement from Officer Lindley's full report that Defendant "did not state that he personally would [pick people off]." (*See* Docket #40-2 at 14, Docket #40-3 at 17, #40-4 at 11). Thus, the judges that issued the respective warrants were aware that Defendant did not say that he was going to partake in the looting and shooting. (Docket #53 at 8). Upon finding that the FBI agents did not make an intentional false statement or material omission in their affidavits, but only a repeated typographical error, the magistrate denied Defendant's request for a *Franks* hearing.

### 3.2.2   Defendant's Motion to Suppress

Defendant also argued that Magistrate Joseph should recommend that this Court suppress any evidence derived from the FBI's use of Defendant's cellphone location data because such use constitutes a warrantless search. (Docket #36 at 8). In her Recommendation, Magistrate Joseph noted that in *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018), the Supreme Court "declined to address whether obtaining real-time [cellphone] data constituted a Fourth Amendment search." (Docket #53 at 12). However, *even if* such actions constitute a Fourth Amendment search, Magistrate Joseph found that exigent circumstances existed in this case,

which justified the FBI's warrantless use of Defendant's cellphone location data. (*Id.* at 12–13).

The magistrate explained that, "[e]xigent circumstances exist when there is a combination of compelling need for official action and no time to secure a warrant." (*Id.* at 12) (citing *Michigan v. Tyler*, 436 U.S. 499, 509) (1978)). She determined that there were exigent circumstances in this case, because based on the initial information the Waverly Police Department gave to the FBI, the FBI believed that Defendant was coming to Kenosha to loot and to pick people off. (*Id.* at 13). As discussed, *supra*, she found that at the time that the FBI filled out the AT&T Form, the FBI did not have the information from Officer Lindley that Defendant did not personally say he was going to do that. (*Id.*) It is against this factual and procedural backdrop that the Court addresses Defendant's objections.

## 4. DEFENDANT'S OBJECTIONS

Defendant explicitly objects to Magistrate Joseph's findings that (1) the FBI agents' sworn statements that they received the Waverly, Iowa police report at 3:00 a.m. on September 1, 2020 contained a typographical error and (2) that the FBI did not possess or receive that report prior to filling out the AT&T Form on September 1, 2020. (Docket #57 at 3–4).[3]

---

[3]The Court notes that this is the only specific objection that Defendant makes to Magistrate Joseph's *Franks* Order and Recommendation. (*See* Docket #57 at 3). However, Defendant purports to "incorporate[], by reference," his prior arguments before Magistrate Joseph as to his request for a *Franks* hearing and his motion to suppress. (*Id.* at 2). Defendant states that he "fully adopts the arguments submitted therein as to each prior pleading." (*Id.*)

Federal Rule of Criminal Procedure 59(b)(2) makes clear that a party may serve and file "*specific written objections* to the [magistrate's] proposed findings and recommendations" to the district court. In light of that rule, this Court, and other district courts within the Seventh Circuit, have unequivocally rejected a litigant's attempt to "incorporate, by reference" his or her prior arguments before the

Defendant points out that the FBI made that statement in multiple search warrant affidavits in this case. (*Id.* at 3). He argues that this statement specifically negated the existence of exigent circumstances, and that the FBI received this information on September 1, 2020, *before* the FBI sought to trace Defendant's cellular data. (*Id.*) Moreover, Defendant argues that it was improper for Magistrate Judge Joseph to make this determination without holding an evidentiary hearing. (*Id.* at 4). Specifically, Defendant argues that the magistrate's conclusion (1) assumes facts not in evidence in violation of Federal Rule of Evidence 611 and ignores the sworn testimony of the FBI agents, (2) was reached without adequate foundation in evidence in violation of Federal Rule of Evidence 602, and (3) considers hearsay evidence submitted by the government, in violation of Federal Rules of Evidence 801, 802, and 803. (*Id.* at 4–8).

5.   **ANALYSIS**

First, the Court makes short work of Defendant's argument that Magistrate Joseph's determinations violated multiple Federal Rules of Evidence. As the Federal Rules of Evidence make clear, when a court decides a "preliminary question about whether . . . evidence is admissible,"

---

magistrate. *See United States v. Castine*, Case No. 19-CR-120-14-JPS, 2019 WL 6715384, at *3 n.1 (E.D. Wis. Dec. 10, 2019) (considering only the specific arguments that the defendant raised in her objection because "permitting a party to incorporate her original briefing into her objection briefing by reference defies the logic" of the district court's appeal-like review of the magistrate's determinations); *United States v. Lowe*, No. 11-CR-74, 2011 WL 2837443, at *1 (E.D. Wis. July 14, 2011) (citing *United States v. O'Neill* 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998) ("A general statement that a party 'objects' or incorporates arguments previously made to the magistrate judge will not suffice."). Based on the foregoing, the Court disregards the arguments Defendant made in the first instance before Magistrate Joseph because he fails to explicitly raise them before this Court.

the court "is not bound by evidence rules . . . ." Fed. R. Evid. 104(a); *see also* Fed. R. Evid. 1101(d)(1) ("These rules . . . do not apply to . . . the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility[.]"). In *United States v. Matlock*, 415 U.S. 164, 173–74 (1974), the Supreme Court recognized that, by way of Rules 104(a) and 1101(d)(1), Congress confirmed that "the same rules of evidence governing criminal jury trials are not generally thought to govern hearings before a judge to determine evidentiary questions . . . ." Based on the foregoing, it is clear that Magistrate Joseph was not bound by the Federal Rules of Evidence when she evaluated Defendant's request for a *Franks* hearing and his motion to suppress. It follows that Magistrate Joseph could not have violated rules to which she was not confined.

Next, the Court evaluates Magistrate Joseph's factual findings that the FBI received the report on September 2, 2020, and thus, that any indication otherwise in the FBI's affidavits was a typographical error. To the extent such findings impacted Magistrate Joseph's denial of Defendant's request for a *Franks* hearing, the Court reviews her findings for clear error. "The clear error standard means that the court can overturn the magistrate judge's ruling only if it is 'left with the definite and firm conviction that a mistake has been made.'" *United States v. Balsiger*, No. 07-CR-57, 2010 WL 3239327, at *2 (E.D. Wis. Aug. 16, 2010) (quoting *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997)).

Based on the record submitted to Magistrate Joseph, it was not clear error for her to determine that the Waverly Police Department sent its report to the FBI on the morning of September 2, 2020. Magistrate Joseph reviewed an email thread dated "September 2, 2020" at 3:47 a.m. from a patrol sergeant at the Waverly Police Department to the FBI. (Docket #47-

10). This email indicated that a report from the Waverly Police Department was attached. (*Id.*) Further, emails from the Kenosha Police Department to the FBI indicate that the Confidential Informant went to the Waverly Police Department for the first time on September 1, 2020 at some point in the afternoon. Magistrate Joseph reviewed an email, dated September 1, 2020 at 4:22 p.m., stating that "[a] female just came to [Officer Lindley's] PD and gave a written statement . . . ." (Docket #47-1). If the Waverly Police Department sent the report on September 1, 2020 at 3:00 a.m., they would have done so hours before the Confidential Informant talked with Officer Lindley. Based on the foregoing, the Court finds it was not clearly erroneous for Magistrate Joseph to find that (1) the FBI received the report on September 2, 2020 at 3:47 a.m., and (2) any reference to the FBI's receipt of the full report on September 1, 2020 was a typographical error.

Lastly, the Court reviews the Magistrate Joseph's findings de novo, as it must, with regard to her Recommendation. Pursuant to Federal Rule of Criminal Procedure 59(b)(3), when considering an objection to a magistrate's recommendation de novo, the Court may receive further evidence. *See also United States v. Wanigasinghe*, No. 95-CR-0073-C-01, 2007 WL 5347637, at *1 (W.D. Wis. Aug. 29, 2007) (noting that pursuant to 28 U.S.C. § 636(b)(1), a reviewing court "may take additional evidence when considering a magistrate judge's report and recommendation . . . ."). Not only has this Court considered the same evidence as Magistrate Joseph, but it has also reviewed a "Call for Service Record" from the Waverly Police Department. (Docket #60-1). This document indicates that, at "14:02" p.m. (2:02 p.m. in non-military time) on September 1, 2020, the Confidential Informant first arrived in the lobby of the police department. (*Id.*) The next entry shows that, at 15:12 p.m. (3:12 p.m.), she advised that Defendant

"stopped at her house at 1215AM and said he was going to Kenosha, WI heavily armed." (*Id.*) This document confirms that the Waverly Police Department did not interact with the Confidential Informant until the afternoon of September 1, 2020. Therefore, Officer Lindley could not have provided a full report to the FBI regarding the Confidential Informant at any time before she first went to the police department.

The Call for Service Record also shows that, on September 2, 2020, at 2:27 a.m., the "Milwaukee FBI" called looking for additional information. (*Id.*) It makes sense that Officer Lindley would then send a more robust report to the FBI at 3:47 a.m. on September 2, in response to the FBI's request. Based on the Court's de novo review of the record, as well as this additional evidence, the Court accepts the magistrate's findings of fact that the FBI received the full report on September 2, 2020 and thus, that any reference to September 1, 2020 in the FBI agents' affidavits was a typographical error.

6. **CONCLUSION**

Based on the foregoing, the Court will affirm Magistrate Joseph's order denying Defendant's request for a *Franks* hearing. (Docket #53). The Court will also adopt Magistrate Joseph's Recommendation (Docket #53), overrule Defendant's objections thereto (Docket #57), and deny Defendant's motion to suppress evidence (Docket #36).

Accordingly,

**IT IS ORDERED** that Magistrate Judge Nancy Joseph's order denying Defendant's request for a *Franks* hearing (Docket #53) be and the same is hereby **AFFIRMED**;

**IT IS FURTHER ORDERED** that Magistrate Judge Nancy Joseph's Report and Recommendation (Docket #53) be and the same is hereby

**ADOPTED**, and that Defendant's objections thereto (Docket #57) be and the same are hereby **OVERRULED**; and

**IT IS FURTHER ORDERED** that Defendant's motion to suppress (Docket #36) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 30th day of April, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge